UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| GLEN E. FLOYD, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 3:09 CV 378 |
| CHAPLAIN LESLIE, *et al.*, | ) | |
| Defendants. | ) | |

## OPINION and ORDER

Glen Floyd, a prisoner confined at the Miami Correctional Facility ("MCF"), filed a complaint by counsel pursuant to 42 U.S.C. § 1983, alleging that three MCF officials violated his First Amendment right to free exercise of his religion. Pursuant to 28 U.S.C. § 1915A(a), the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. FED. R. CIV. P. 12(b)(6) provides for the dismissal of a complaint, or any portion of a complaint, for failure to state a claim upon which relief can be granted. Courts apply the same standard under § 1915A as when addressing a motion under RULE 12(b)(6). *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006). "Dismissal is appropriate only when it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief." *Id.*

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation

marks and citations omitted).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.
>
> * * *
>
> [O]nly a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief.
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009) (quotation marks and citations omitted).

The Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997, provides that prisoners must utilize any available prison grievance procedure before they may file a § 1983 claim regarding conditions of confinement. Pursuant to § 1997e(a), a prisoner must exhaust available administrative remedies before bringing an action with respect to prison conditions. *Booth v. Churner*, 532 U.S. 731 (2001); *Perez v. Wisconsin Dep't of*

2

*Corr.*, 182 F.3d 532, 537 (7th Cir. 1999). "§ 1997e applies to 'all inmate suits, whether they involve general conditions or particular episodes, and whether they allege excessive force or some other wrong.'" *Dixon v. Page*, 291 F.3d 485, 488 (7th Cir. 2002) (quoting *Porter v. Nussle*, 534 U.S. 516, 122 (2002)).

Floyd states in his complaint that he did not file a grievance concerning his claims because the MCF has no "prisoner grievance system that would allow you to file a grievance about the things you are suing about[.]" (Compl. 2.) For the purposes of this screening order the court will accept this statement as true and for the purpose of this memorandum, the court presumes that Floyd did not need to exhaust his administrative remedies.

Floyd brings this action under 42 U.S.C. § 1983, which provides a cause of action to redress the violation of federally secured rights by a person acting under color of state law. *Burrell v. City of Mattoon*, 378 F.3d 642 (7th Cir. 2004). To state a claim under § 1983, a plaintiff must allege violation of rights secured by the Constitution and laws of the United States, and must show that a person acting under color of state law committed the alleged deprivation. *West v. Atkins*, 487 U.S. 42 (1988). The first inquiry in every § 1983 case is whether the plaintiff has been deprived of a right secured by the Constitution or laws of the United States. *Baker v. McCollan*, 443 U.S. 137, 140 (1979).

Floyd states that he is a Satanist who had religious materials in a folder stored with his property, and which he wished to have returned to him so that he could practice his religion. Prisoners "retain the right to practice their religion to the extent

that such practice is compatible with the legitimate penological demands of the state." *Al-Alamin v. Gramley*, 926 F.2d 680, 686 (7th Cir. 1991).

Floyd states that on March 22, 2009, he asked Correctional Officer Bontrager "to please get me my folders, which contain my Beliefs." (Compl. 3.) Officer Bontrager told him to "see the sergeant." (*Id.*) Floyd then asked Sergeant Liken if he could have his folders. Sgt. Liken asked him what the folders contained, and Floyd responded that it was "Pagan material, witchcraft, Satanism." (*Id.*) According to Floyd, Sgt. Liken responded "we don't allow that here" (*id.*), and refused to allow him to have his religious materials even though Floyd told him that the Supreme Court allowed prisoners freedom of belief.

According to Floyd's allegations, Officer Bontrager did not deny Floyd his religious materials; he merely told Floyd that he would have to ask his supervisor. But giving Floyd the benefit of the inferences to which he is entitled, his claim that Sgt. Liken denied him the opportunity to practice his religion without a legitimate penological reason is sufficient to survive dismissal at the pleadings stage.

Floyd also sues the MCF chaplain, because "he should be held responsible to insure all prisoners, whether in population, or [in] the hole, all [correctional officers] would know, hey this guy's a Satanist, give him [his] Bible and folders." (Compl. 4.) Floyd does not allege that Chaplain Leslie had any direct personal involvement in the decision to deny Floyd access to his religious material. He sues Chaplain Leslie on the theory that the chaplain should be responsible for any decision made by a correctional

4

officer regarding religious material.

It is well established that a prisoner in a § 1983 case may not recover damages from officials solely because of their supervisory positions under the theory of *respondeat superior*. *Antonelli v. Sheahan*, 81 F.3d 1422, 1428 (7th Cir. 1996). In order to be liable for damages, an individual must have personally participated in the alleged constitutional deprivation. *Zimmerman v. Tribble*, 226 F.3d 568, 574 (7th Cir. 2000); *see also Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (to be liable for the deprivation of a constitutional right, an official must personally participate in the deprivation or must direct the conduct or have knowledge of and consent to the conduct).

If Floyd seeks to sue Chaplain Leslie on a "failure to train" theory, his claim against Chaplin Leslie must still be dismissed. "Failure to train claims are usually maintained against municipalities, not against individuals." *Sanville v. McCaughtry*, 266 F.3d 724, 739 (7th Cir. 2001). When the defendant functions as an "arm of the state" in establishing policies and in training and disciplining his subordinates, he is "entitled to Eleventh Amendment immunity for these particular functions." *Manders v. Lee*, 338 F.3d 1304, 1305-06 (11th Cir. 2003).

Even assuming Chaplain Leslie had a duty to train all correctional officers at the MCF on when inmates are entitled to receive and possess religions materials, the chaplain would be acting as a State official, so the Eleventh Amendment precludes an action against him for damages in his official capacity. *Kentucky v. Graham*, 473 U.S. 159,

167 (1985); *Meadows v. State of Indiana*, 854 F.2d 1068, 1069 (7th Cir. 1988). Moreover, state officials, in their official capacities, are not "persons" within the meaning of § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

For the foregoing reasons, the court:

(1) **GRANTS** the plaintiff leave to proceed against defendant Liken in his individual capacity for damages on his First Amendment free exercise of religion claim;

(2) **DISMISSES** all other claims and **DISMISSES** defendants Leslie and Bontrager;

(3) Pursuant to 42 U.S.C. § 1997e(g)(2), **ORDERS** that defendant Liken respond to the complaint as provided for in the FEDERAL RULES OF CIVIL PROCEDURE; and

(4) **DIRECTS** the Marshals Service to effect service of process on defendant Liken on the plaintiff's behalf, and **DIRECTS** the Clerk to ensure that a copy of this order is served on him along with the summons and complaint.

        **SO ORDERED.**

**DATE:** September 23, 2009

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT